COMMONWEALTH *vs.* KEVIN NICKERSON.

Suffolk. January 6, 1982. — April 30, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Admissions and confessions. *Evidence*, Impeachment of credibility, Admissions and confessions, Admission by silence.

In the circumstances it was error requiring reversal for the judge at a criminal trial to instruct the jury that, in determining the credibility of the defendant's testimony, they might consider that he did not come forward prior to his arrest with an exculpatory version of the events at issue. [57-62]

INDICTMENT found and returned in the Superior Court Department on May 9, 1980.

The case was tried before *Dwyer*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*James J. Cipoletta* for the defendant.

*Brent D. Redstone*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. We consider the question whether a judge may instruct a jury that, in determining the credibility of a criminal defendant's testimony, they may consider that he did not come forward with his exculpatory story prior to his arrest. We conclude that, in the circumstances of this case, such a charge was error, and, because the error may have been prejudicial, we reverse the defendant's conviction of assault and battery by means of a dangerous weapon.

The defendant was tried in April, 1981, along with one Kenneth Paulson. Only the defendant's appeal from his conviction is before us. The Commonwealth presented evidence that both the defendant and Paulson cut the victim while he was in a motor vehicle in a parking lot of a Revere

liquor establishment in December, 1979. A melee had broken out between the victim's group and the group of which the defendants were members. Among those in the defendant's group was one James "Moosey" Whipple who was not available at the time of trial. The defendants produced testimony from three witnesses that "Moosey" Whipple was the person who cut the victim. First, the defendant Paulson so testified. On cross-examination and without objection, he testified that he had not reported to the police that Whipple had a knife and had cut someone. Next, Paulson's brother Stephen also implicated Whipple and, in his cross-examination and generally without objection,[1] he testified that he also had never told the police that Whipple committed the crime. Stephen admitted on the stand that he was telling for the first time what had happened. Finally, the defendant Nickerson testified that Whipple had cut the victim. Without objection, Nickerson testified on cross-examination that he had assisted a felon in escaping after a crime by driving Whipple home and that he did not tell the police of Whipple's involvement in the two days after the crime before the defendant was arrested. In the Commonwealth's closing, the prosecutor argued to the jury that neither defendant was to be believed because they had not come forward to report the crime. There was no objection to the prosecutor's argument.

The judge charged the jury on the significance of the defendant's failure to tell the police on the night of the crime that Whipple had done the cutting. This portion of the charge is set forth in full in the margin.[2] At the conclusion

---

[1] The defendant's counsel did object without success to one question in the midst of a series of questions on this subject.

[2] "Now I am going to address a small portion of the evidence which dealt with cross-examination on whether or not the defendants told the police on that night in question that Whipple did the cutting involved here, committed the assault and battery by means of a dangerous weapon involved here or said that he had done such an act.

"In order to avoid any confusion and ambiguity, I want to make sure that that evidence was admitted for you to hear it and to evaluate it and to accept it or reject it only insofar as that evidence related to the failure of

of the charge, counsel for each defendant objected to this portion of it. Counsel for the defendant Nickerson stated his objection in these words: "[T]he failure to inform the police that a crime has been committed can[not] be used against a testifying defendant to test his credibility." He did not object to the judge's arguably too broad instruction that the failure to report the crime to the police could be considered "to determine the reliability of all of the evidence offered by that defendant during the course of his evidence."[3] Nor did defense counsel object to the absence of an instruction that the jury could consider the defendants' failure to report the crime only if it would have been natural to expect the defendants to do so in the circumstances. After some discussion, the judge decided not to revise this portion of his charge. The jury returned guilty verdicts against each defendant. We transferred defendant Nickerson's appeal to this court.

---

the defendants that night to tell the police what they knew or heard from Whipple.

"Now, that instruction is to be affected by what I am about to say. There is no legal obligation on a person to report a crime. An assault and battery by means of a dangerous weapon is a crime. There is no obligation upon a person to report a crime, and, therefore, failure to do so is not evidence of guilt.

"Again, in order to avoid any possible confusion, I issue this word of caution: No failure of the defendants to make any statements regarding Whipple after arrest is to be considered by you at all if you find that there was any such evidence in this case. I am not at all sure that there was.

"So, with a super-abundance of caution, I want to make sure that we do not infringe upon the constitutional right of each of these defendants to remain silent after arrest because after arrest a person is under no obligation to speak to the police. He had a constitutional right to remain silent, and evidence of his failure to tell the police anything he knew or saw or heard is not to be considered on this issue of guilt.

"However, if you find beyond a reasonable doubt that the defendants on that night failed to report to the police or any authority what Whipple had said or what they had observed Whipple do, you may consider that to determine the reliability of all of the evidence offered by that defendant during the course of his evidence. You may just consider that, in light of all of the other circumstances, in determining the reliability of the testimony involved."

[3] We assume that this language, in its context, refers only to the testimony (and not to all the evidence) offered by each defendant.

It is generally appropriate to impeach a witness by showing that he was silent in circumstances in which he naturally would have been expected to deny some asserted fact (see *Assessors of Pittsfield* v. *W.T. Grant Co.*, 329 Mass. 359, 360 [1952]; *Hill* v. *Crompton*, 119 Mass. 376, 382 [1876]; 3A J. Wigmore, Evidence § 1042 [Chadbourn rev. 1970]; K. Hughes, Evidence § 232, at 256 [1961]), or that, in the circumstances, the witness would be expected to disclose some fact and did not do so (*Langan* v. *Pianowski*, 307 Mass. 149, 151-152 [1940]). Such an adoptive admission by silence may arise when a statement is made in the presence of the witness, and he does not deny it. The jury must then consider whether the witness heard the statement, understood it, had an opportunity to reply, could properly do so, and appeared to acquiesce in the statement. See *Hill* v. *Crompton, supra* at 382. It depends on the circumstances whether a denial from the witness of a fact asserted would naturally have been expected. 3A J. Wigmore, Evidence, *supra*. If such a response would naturally have been expected, the jury may consider the failure to respond in assessing the veracity of the witness in testifying contrary to the fact that was adoptively admitted by his silence. In this respect, the silence is the substantial equivalent of a prior inconsistent statement. *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 296 (1981).

A different situation exists when the prosecution undertakes to impeach a defense witness by showing that, although the witness had an opportunity to tell his story to the authorities prior to his testifying, he did not do so. In *Commonwealth* v. *Cefalo*, 381 Mass. 319, 338 (1980), we commented that pointing out the failure of defense witnesses to tell their stories to the authorities, when they had an opportunity to do so, "was a proper mode of impeaching these witnesses by showing recent contrivance or bias in favor of the defendant." The *Cefalo* case did not involve impeachment of the defendant himself. In *Commonwealth* v. *Brown, supra,* the question of impeaching a defense witness, not the defendant, was before the Appeals Court.

There, the prosecutor cross-examined defense witnesses as to whether they had reported exculpatory information to the police. The Appeals Court reversed the conviction because the prosecutor had not laid an adequate foundation for this kind of cross-examination. In reaching its result, the Appeals Court relied on reasoning appearing in *People v. Dawson*, 50 N.Y.2d 311 (1980), and noted that, although the admission of evidence of a failure to report was within the sound discretion of the trial judge, there that discretion had been exceeded.[4]

Where a nonparty defense witness is impeached by showing that he did not speak up when it would have been natural for him to do so, no direct challenge to the defendant's testimony is raised. Such an impeachment technique seems generally acceptable. See 3A J. Wigmore, Evidence § 1042 (Chadbourn rev. 1970); J. Weinstein & M. Berger, Evidence par. 607[06] n.28 (1981). Where, however, such impeachment is attempted of a defendant, troublesome questions are raised. Of course, it is only a defendant's

[4] The Appeals Court observed that there could be instances in which "it would not be natural for a witness to offer exculpatory evidence to law enforcement officials." *Commonwealth* v. *Brown, supra* at 296. The witness may think that disclosure would be futile, or he may not realize the significance of the information he possesses. Of course, the witness's attorney may have told him not to discuss the case. Therefore, the Appeals Court concluded that some caution is necessary in order to be certain that a witness's pretrial silence is in fact inconsistent with his trial testimony. That court then said: "To this end, as suggested in *People* v. *Dawson*, 50 N.Y.2d 311, 321-322 [& n.4] (1980), we think that the prosecutor should lay a foundation for this type of cross-examination by first establishing that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so." *Commonwealth* v. *Brown, supra* at 296-297.

We do not regard the examples stated by the Appeals Court as exhaustive. A witness may have a particular reason for not wanting to deal with the police. See *People* v. *Conyers*, 52 N.Y.2d 454, 458 (1981).

pre-arrest silence that can freely be used as an adoptive admission.[5]

The Supreme Court of the United States has held that a defendant's pre-arrest silence may be used to impeach him without denying fundamental fairness guaranteed by the Fourteenth Amendment. *Jenkins* v. *Anderson*, 447 U.S. 231, 239 (1980). The Supreme Court has left it to the States to determine under their own rules of evidence when pre-arrest silence is so inconsistent with a defendant's testimony that impeachment by reference to that silence is probative. *Id.* The defendant has made no argument to us on the basis of the Constitution of the Commonwealth. He does argue the issue, however, in terms of common law rules of evidence.

While we need not consider whether a defendant's pre-arrest silence might properly be admitted to impeach his testi-

---

[5] The postarrest silence of a defendant, such as a failure to deny an accusation, may not be used substantively to prove his guilt. The right of a defendant to remain silent in such a situation was established as a principle of the common law in this Commonwealth long before it became a matter of constitutional right. See *Commonwealth* v. *McDermott*, 123 Mass. 440, 441 (1877); *Commonwealth* v. *Kenney*, 12 Met. 235, 238 (1847); McCormick, Evidence § 161, at 353-354 (2d ed. 1972). Today, of course, because of constitutional considerations, guilt cannot properly be inferred from silence in the course of police interrogation of a defendant under arrest. See *Commonwealth* v. *Haas*, 373 Mass. 545, 559 (1977); *Miranda* v. *Arizona*, 384 U.S. 436, 468 n.37 (1966).

When the use of postarrest silence for impeachment purposes is involved, the Supreme Court of the United States distinguishes between cases in which Miranda warnings have been given and cases in which such warnings have not been given. Compare *Doyle* v. *Ohio*, 426 U.S. 610 (1976), with *Fletcher* v. *Weir*, 455 U.S. 603 (1982) (per curiam). In the absence of Miranda warnings, due process of law under the Fourteenth Amendment does not bar a State from cross-examining a defendant as to postarrest silence and each State is free to develop its own rules of evidence concerning the extent to which such postarrest silence may be deemed to impeach a criminal defendant's own testimony. *Fletcher* v. *Weir, supra* at 604-606. This court has suggested that a separate question is raised under art. 12 of the Declaration of Rights of the Commonwealth if an attempt is made to use a defendant's postarrest silence against him. *Commonwealth* v. *Haas, supra.*

mony in some other instances, in this case it is inappropriate to permit impeachment by silence. The prosecution wanted the jury to infer that the defendant was not telling the truth on the stand because he did not immediately come forward to identify "Moosey" Whipple as the person who cut the victim. The judge charged the jury that they could consider the defendant's failure to come forward on the night of the crime in assessing the reliability of his testimony. The defendant had no duty, as the Commonwealth concedes, to report the crime (see *Commonwealth* v. *Lopes*, 318 Mass. 453, 458-459 [1945]), nor did he have any duty to offer exculpatory information to the authorities, and the judge rightly advised the jury accordingly. However, in this case, the judge instructed the jury in effect that the defendant's veracity could be doubted if they found that he had not come forward to disclose that he was at the scene of the crime, that he saw the victim attacked, that he saw a weapon at the scene, and that he knew the attacker was Whipple. Moreover, such a disclosure might also have shown, as it did at trial, that the defendant left the scene in a vehicle with Whipple. This information would have gone a long way toward proving that the defendant committed the crime charged and, as an admission, would have been admissible as tending to prove his guilt. The victim was cut during a confrontation between two groups in a parking lot, and the judge charged the jury in a way that suggested the defendant's participation in the crime with others would warrant a finding of the defendant's guilt.

We think it was particularly inappropriate in such circumstances to permit the jury to consider the defendant's failure to come forward as possibly impeaching his trial testimony. It would not have been "natural" for the defendant to have come forward in the circumstances of this case and produce incriminating evidence against himself. While the use of this defendant's pre-arrest silence would apparently not violate due process principles of the Fourteenth Amendment (*Jenkins* v. *Anderson*, 447 U.S. at 239), his failure to come forward in these circumstances says little

about the truth of his trial testimony. To permit the use of his pre-arrest silence, if only for impeachment purposes, suggests that the defendant had a duty to provide incriminating evidence against himself and burdens his right to testify in his own defense. *Id.* at 246 (Marshall, J. dissenting). Although most lay people do not know the intricacies of their constitutional rights, it is a generally held notion that one does not have to say anything to the police and that what one does say may be used against him. We conclude that the judge should not have instructed the jury that, in assessing the reliability of the defendant's testimony, they could consider the defendant's pre-arrest failure to tell the police that "Moosey" Whipple was the person who cut the victim.

The Court of Appeals of the State of New York, after the United States Supreme Court handed down its *Jenkins* opinion, reached substantially the same conclusion that we have, doing so as a rule of evidence. *People* v. *Conyers*, 52 N.Y.2d 454, 457 (1981). That court distinguished impeachment of a defense witness from impeachment of the defendant himself. *Id.* at 459 n.2. See *People* v. *Dawson*, 50 N.Y.2d 311, 321 (1980). We think the reasoning of the Court of Appeals of New York (*Conyers, supra* at 458-459), in support of the rule it adopted is appropriate on the facts of the case before us. [6] The situation may be different where

---

[6] In the *Conyers* case, the Court of Appeals was concerned with a situation in which the testifying defendant had failed to speak when confronted by law enforcement officials prior to his arrest. The court concluded that evidence of pre-arrest silence in such a situation was "of extremely limited probative worth." *Supra* at 458. The court noted, as we have, that such an individual's failure to speak may be the result of his awareness that he has no obligation to speak, his caution arising from knowledge that anything he says may be used against him, and his belief that efforts to exonerate himself would be futile. The court also acknowledged that some individuals would not come forward because they want to avoid contact with the police. Although pre-arrest silence may reflect negatively on a defendant's trial testimony, that silence may be entirely unrelated to the truth or falsity of his testimony.

Balanced against the likely low potential of evidence of a defendant's pre-arrest silence for advancing the truth-finding process is the risk of

a defendant failed to come forward prior to his arrest to report a fact or facts not tending to incriminate him.

In general, impeachment of a defendant with the fact of his pre-arrest silence should be approached with caution, and, wherever it is undertaken, it should be prefaced by a proper demonstration that it was "natural" to expect the defendant to speak in the circumstances. A trial judge should feel free to conduct a voir dire on the question of impeachment of a witness (particularly a defendant) by his silence; and, if the evidence is admitted, the judge should, on request, instruct the jury to consider that silence for the purposes of impeachment only if they find that the witness naturally should have spoken up in the circumstances.

There remains the question of the effect of the error in the judge's charge. The Commonwealth argues that it proved a strong case against the defendant and that any error was not prejudicial. However, there was sharp conflict in the testimony. The defendants' credibility was an important issue in the case. The judge told the jury that, if they found beyond a reasonable doubt that the defendants had not reported to the police on the night of the crime, the jury could consider that fact in determining the reliability of the defendants' testimony. Since each defendant admitted that

---

substantial prejudice to the defendant of an attempt to impeach him because of his failure to come forward with an exculpatory version of the events. This potential prejudice is substantial even if the defendant's pre-arrest silence is used not to prove his guilt but only for the purpose of impeachment. "Jurors, who are not necessarily sensitive to the wide variety of alternative explanations for a defendant's pretrial silence, may be prone to construe such silence as an admission and, as a consequence, may draw an unwarranted inference of guilt. Because evidence of a defendant's pretrial silence may have a disproportionate impact upon the minds of the jurors and because the potential for prejudice inherent in such evidence outweigh[s] its marginal probative worth, we conclude that the use of such evidence for impeachment purposes cannot be justified in the absence of unusual circumstances." *People* v. *Conyers, supra* at 459.

A nonparty witness's failure to come forward was distinguished. *Supra* at 459 n.2.

Of course, a defendant's failure to report certain facts to someone other than the police would be an appropriate subject for cross-examination where it would have been natural for the defendant to report those facts.

he had not come forward, the jury were told in effect that the reliability of their testimony was subject to question. In this instance, we think the error, as to which there was appropriate objection, cannot fairly be characterized as non-prejudicial. The judgment is reversed, the verdict is set aside, and the case is remanded for a new trial.[7]

*So ordered.*

---

[7] The Commonwealth does not argue that, because the evidence of the defendants' failure to come forward on the night of the crime was admitted without objection, the judge was entitled to charge the jury on that evidence. A judge may not, over objection, give an erroneous instruction concerning the consequences of evidence that was inadmissible had a timely objection been made.