COMMONWEALTH *vs.* FRED J. JOHNSON. No. 91-P-262. June 30, 1992.
*Firearms. Constitutional Law*, Admissions and confessions. *Evidence*, Admission by silence. *Practice, Criminal*, Failure to make objection, Comment by prosecutor.

The defendant was convicted by a jury in the Boston Municipal Court of the unlawful carrying of a firearm and possession of ammunition. It was the theory of the defense that the firearm had been "planted" on the defendant and that he had no knowledge of the presence of the gun on his person. He claims, on appeal, that the prosecutor improperly elicited testimony regarding the defendant's postarrest silence and mentioned in his closing argument that the defendant failed to deny knowledge of the gun at the time of his arrest. The defendant argues that the improper use of the defendant's silence strongly suggested to the jury that the defendant was guilty.

We summarize the evidence presented by the Commonwealth. On the night of July 24, 1989, three police officers were on duty in an unmarked cruiser in Roxbury. At about 11:30 P.M., the officers responded to the

scene of a shooting on Brunswick Street. The officers learned that a witness had seen a white Hyundai automobile with two or three occupants leaving the scene. The automobile had a wheelchair protruding from the trunk. Thereafter, the officers learned, by radio, that other police officers had stopped a white Hyundai on Quincy Street. The automobile had two or three occupants. It also had bullet holes in its side. The officers drove in their cruiser to Quincy Street.

When the cruiser turned into Quincy Street from Warren Street, the officers saw the defendant in a wheelchair being pushed by another man, James Daniels. Believing that the two men might have been involved in the shooting, the officers stopped them and conducted a threshold inquiry. One officer conducted a pat-down frisk of Daniels, but found no weapons. Another officer then frisked the defendant and found a loaded handgun in the right rear pocket of his pants. At that point, the defendant was placed under arrest, advised of his Miranda rights, and transported to the police station. No conversation took place between the police officers and the defendant prior to his arrest.

At the police station, the defendant was booked on a charge relating to the shooting incident on Brunswick Street.[1] He was again advised of his Miranda rights and questioned about the incident. The defendant admitted that he was sitting in the white Hyundai at the scene of the shooting. He denied, however, that he was involved in the incident. The defendant said, "Look at the gun, Officer; you can tell it has not been fired."[2]

The defendant, testifying in his own behalf, denied knowing that the gun was in his rear pocket. He stated that he was paralyzed from the waist down. Although he could feel vibrations, had the use of his arms, and could reach his back pocket, he had no "skin touch" feeling from his waist down as a result of his condition.

The defendant testified that on the night in question he was riding home in the white Hyundai with three other persons, including Daniels. The defendant knew Daniels but did not socialize with him on a regular basis. En route, the automobile stopped so Daniels could talk with someone standing on the corner of Brunswick Street. The defendant then heard gunshots; Daniels ran back to the automobile, and they drove away. The defendant then told the driver that he wanted to "get the hell out of this car." The automobile stopped, and the defendant, who was sitting in the back seat, asked Daniels to help him get into the wheelchair. Daniels did so, and he began pushing the defendant down the street. The police arrived almost immediately and stopped them. After Daniels and the defendant were frisked, an officer showed the defendant a gun which the officer was holding in his hand, and told him that the gun was found in his pocket. The

---

[1] After conducting further investigation, the police determined that the defendant and Daniels were not involved in the Brunswick Street shooting.

[2] In his testimony, the defendant denied that he made the statement quoted in the text.

officers then placed the defendant under arrest, advised him of his Miranda rights, and took him to the police station.

The issue on appeal arose in the following manner. The defendant was asked on cross-examination:

PROSECUTOR: "Let me ask you a question. When do you think [Daniels] planted the gun, when he helped you out or when the police arrived?"

DEFENDANT: "I don't — he hid it when I was getting out of the car, that's the only opportunity to do it —"

PROSECUTOR: *"And when you were shown the gun by Officer Marner, you didn't deny it, did you?"*

DEFENDANT: "I didn't know where he got (inaudible) carry —"

There was no objection to the prosecutor's question. Later, in his closing argument, the prosecutor stated the following:

> "Ladies and gentlemen, when [defense counsel] was addressing you, she asked you to keep your common sense with you and to decide things. I'd suggest to you the same thing: use your common sense, because you don't leave it outside when you sit here. Was it possible, ladies and gentlemen, for the unknown person to put the gun down his back pocket? Was it found between the wheelchair and his back? No, it was found in his pocket.

> "[Defense counsel] also addressed you, she said, 'I'm not saying what the police are saying — is saying is untrue.' Well, I agree with that; what the police are saying is not a lie or untrue, *because, if you recall, they put the gun in front of him, nothing's (?) said.*"

Again, there was no objection to the now challenged portion of the prosecutor's argument.

The defendant claims that he had been arrested when he was shown the weapon. He argues, therefore, that his postarrest failure to deny knowledge of the presence of the gun on his person could not be used against him as evidence of his guilt. He cites *Commonwealth v. Nickerson*, 386 Mass. 54, 59 n.5 (1982), in support of his argument.[3] In *Nickerson*, the court stated that "[t]he postarrest silence of a defendant, such as a failure

---

[3]Here, the defendant concedes that the silence mentioned by the prosecutor did precede the Miranda warnings. Therefore, he does not rely on *Doyle v. Ohio*, 426 U.S. 610 (1976), and its progeny. In *Doyle*, which involved cross-examination by the prosecutor on the defendants' failure to protest their innocence to the arresting officer (see 426 U.S. at 614 n.5), the Court held that due process is violated by any use of a defendant's silence after he had been arrested and advised of his Miranda warnings. *Id.* at 619.

to deny an accusation, may not be used substantively to prove his guilt." *Ibid.* The Commonwealth claims, however, that the single question asked by the prosecutor was too unclear to constitute an impermissible comment on the defendant's silence. We agree with the Commonwealth.

Upon our review of the transcript, the question asked by the prosecutor appears to be unclear and ambiguous. It must have sounded that way to defense counsel because she failed to object. "The absence of any objection by the defendant's trial counsel indicates that his counsel did not consider 'the tone, manner, and substance' of the prosecutor's [question] when it was made to be harmful." *Commonwealth* v. *Stewart*, 411 Mass. 345, 357 (1991), quoting from *Commonwealth* v. *Toro*, 395 Mass. 354, 360 (1985). We make the same observation in regard to the one-sentence reference in the closing argument to the defendant's silence. "Moreover, it was a vague and fleeting comment, not likely to influence, or even to seize the attention of the jury." *Commonwealth* v. *Cunneen*, 389 Mass. 216, 223-224 (1983). On this record, there was no substantial risk of a miscarriage of justice.

*Judgments affirmed.*

*Eric Brandt*, Committee for Public Counsel Services, for the defendant.
*Nancy W. Geary*, Assistant Attorney General, for the Commonwealth.