COMMONWEALTH vs. GEORGE A. LOPES.

No. 91-P-1487.

Plymouth. October 15, 1992. - February 26, 1993.

Present: DREBEN, FINE, & IRELAND, JJ.

*Identification. Evidence*, Impeachment of credibility, Identification, Cross-examination, Exculpatory, Prior inconsistent statement, Opinion. *Practice, Criminal*, Argument by prosecutor, Cross-examination by prosecutor.

In the circumstances of a criminal trial, sufficient foundation was laid for the prosecutor's cross-examination of two defense witnesses regarding their failure to provide exculpatory information to the police, and in any event the defendant demonstrated no prejudice from the cross-examination. [180-182]

At a criminal trial, the prosecutor's cross-examination of the defendant was proper and, in light of the Commonwealth's strong case, there was no substantial risk of a miscarriage of justice with respect to the prosecutor's fleeting reference to the defendant's failure to have gone to the police with information. [182-185]

At a criminal trial, the judge did not abuse his discretion in admitting in evidence certain inconsistent statements of the victim for impeachment purposes. [185-186]

At a criminal trial, there was no error in the judge's refusing to strike testimony that the defendant had a gun because of the way he kept his hand in his pocket, where the statement was not offered as an opinion and was admissible as a conclusion or a statement of "observed facts." [186]

INDICTMENTS found and returned in the Superior Court Department on June 4, 1990.

The cases were tried before *Cortland A. Mathers*, J.

*Donald A. Harwood* for the defendant.

*Robert C. Thompson*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. On April 16, 1990, the victim, Michael Starks, was shot. The defendant, George Lopes, was convicted of armed assault with intent to murder, assault and battery by

means of a dangerous weapon, and unlawfully carrying a firearm. At trial, the defendant presented evidence that the defendant was at a bar at the time of the shooting and not at the scene of the assault. He also elicited testimony that the victim's assailant was shorter and darker skinned than the defendant. Although two witnesses testified that they saw the defendant shoot the victim, the victim testified that he did not know who shot him.

The main thrust of the defendant's appeal is that the judge erroneously permitted the prosecutor to question the defendant and two defense witnesses, Louis Silva and Jay DeRosa, regarding their respective failures to provide exculpatory information to the police.[1] The defendant also claims that opinion evidence of the victim's mother and a prior "inconsistent" statement of the victim were erroneously admitted in evidence. We affirm the defendant's convictions.

1. *Prosecution's questioning of Silva.* After the Commonwealth rested, Louis Silva was called as a defense witness. He testified that at the time of the shooting he was in an automobile near the victim's home. He claimed that he saw in his rearview mirror the fleeing assailant. When asked whether it was the defendant, he answered, "No, [the person] was darker . . . [and] shorter" than the defendant. The prosecutor, apparently to suggest recent contrivance, questioned Silva as to whether he had, before his testimony at trial, ever told anybody about what he had seen. He answered that he had told Mike (the victim) and "[t]hat's about it." He said he was never asked by the police at the time of the shooting whether he had seen the assailant.

Relying on *Commonwealth* v. *Brown,* 11 Mass. App. Ct. 288, 296-297 (1981), the defendant claims that the prosecutor did not, as required, "lay a foundation for this type of cross-examination by first establishing that the witness knew

---

[1]The transcript originally provided to this court was deficient in that significant pages were omitted and certain pages appeared in multiple copies but were given different numbers. The panel requested that the Commonwealth provide a more accurate copy of Volume I. Our discussion of the evidence is taken from the copy provided by the Commonwealth.

of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so."

We think, in the circumstances, that a sufficient foundation for the questioning had been laid under *Brown*, and that the "jury could have concluded that it would have been natural for [Silva] to go to the police." *Commonwealth* v. *Mahan*, 18 Mass. App. Ct. 738, 744 (1984). Silva, who was twenty-one, had known the defendant since eighth grade, and had socialized with him. He had been present at the scene of the shooting, thought he had seen the assailant, and was a friend of the victim as well as of the defendant. Concerned about what had happened, he had gone to the victim's house and had been present when the police arrived. He knew how to get in contact with the police and had informed the victim of what he had seen. In view of Silva's friendship with the victim and his long acquaintance with the defendant, the jury could infer that Silva, who was a student getting a degree in law enforcement, had learned from either the victim or the defendant that charges concerning the shooting had been brought against the defendant. Silva also admitted that no one advised him not to talk to the police. Although he stated that he thought the matter was none of his business, the jury were free to disbelieve him. They could draw the inference that a person working toward a degree in law enforcement could reasonably be expected to provide police with information concerning the shooting of a friend when another friend, or at least a long-time acquaintance, was charged with the shooting. See *Commonwealth* v. *Nickerson*, 386 Mass. 54, 58 & n.4 (1982); *Commonwealth* v. *Gregory*, 401 Mass. 437, 445 (1988).

Moreover, if this suggestion of recent contrivance played any role in the jury's disbelief of Silva's assertion that the assailant was not the defendant, it was insignificant in light of the subsequent, more damaging impeachment testimony of

Detective Gomes. Gomes, a Commonwealth witness, was the detective who had investigated the crime. He was recalled as a witness by the Commonwealth on the day after Silva's testimony. Gomes testified that he had interviewed Silva on the preceding day prior to Silva's testimony in court. Gomes testified that he and Silva had discussed the incident and that Silva had told him that, while he was sitting in his car, "a blur ran by" and that he was unable to tell whether the person fleeing was or was not the defendant. See *Commonwealth* v. *Holland*, 410 Mass. 248, 260 (1991) (questioned evidence overshadowed by much stronger evidence to the same effect). Thus, even if the foundation for the questioning of Silva was not properly laid, the defendant has not sustained "the burden of showing an abuse of discretion and *resulting prejudice*" (emphasis supplied).[2] *Commonwealth* v. *Egerton*, 396 Mass. 499, 507-508 (1986).

2. *Prosecution's questioning of Jay DeRosa.* DeRosa, the defendant's half brother, testified that he was with the defendant at a bar until it was dark. Evidence had been presented that the victim had been shot in the early evening when it was still light. The prosecutor questioned DeRosa whether he had given this alibi evidence to the police before trial. He acknowledged that he had not.

The only claim made by the defendant on appeal is that it was not established that he (Lopes) or his lawyer had not told DeRosa to refrain from going to the police. The claim is refuted by DeRosa's testimony, specifically acknowledging that he was not told "not to say anything about it," and that nobody told him not to go to the police.

3. *Prosecution's questioning of the defendant.* The prosecution cross-examined the defendant as follows:

> Q. "Right after the time you got arrested, when you realized you were accused of shooting Michael Starks [the victim], you didn't speak with your half brother about this, did you?"

---

[2]It is also not altogether clear that the defendant made a proper objection to the cross-examination of Silva now challenged.

A. "Yes, I did."

Q. "You did?"

A. "Yes, I did."

Q. "And that was the point when you urged him to go to the police, isn't that fair to say?"

A. "No. We went to the probable cause to identify me and no one identified me."

Q. "Did you tell your half brother, with this urgent information, to go tell the police, help me out?"

A. "That's what the court was for."

Q. "Did you go?"

A. "Wouldn't make no difference."

Q. "Did you go?"

A. "No."

Q. "Did you ask him to go?"

A. "No."

Q. "Did he voluntarily go do it?"

A. "No."

Q. "Did he say, 'I've got some important information. I was with you. You couldn't have done it?' "

A. "That's my reason to come to court."

Q. "So what you are telling us now is that within the week or so after the time that the shooting occurred —"

A. "I was in jail."

Q. "You and your cousin or half brother talked about him being there, is that right?"

A. "Because I wasn't there. How can I say? I was in jail all day."

The defendant registered no objection at trial to this interrogation. He urges that this was improper postarrest questioning, see *Commonwealth* v. *Nickerson*, 386 Mass. at 59 n.5, and created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

We conclude the argument fails. The primary thrust of the questioning was directed at showing that it would have been natural for the defendant to discuss with his half brother DeRosa that they had been together at the bar at the time of the shooting, and, if that had been the case, the defendant undoubtedly would have asked DeRosa to inform the authorities of that fact. What the defendant told DeRosa to do was a proper subject for cross-examination. See *Commonwealth* v. *Nickerson*, 386 Mass. at 62 n.6 ("defendant's failure to report certain facts to someone other than the police would be an appropriate subject for cross-examination where it would have been natural for the defendant to report those facts").

To the extent that the defendant was asked whether he, himself, had gone to the police, this was improper. *Commonwealth* v. *Haas*, 373 Mass. 545, 559 (1977), *S.C.*, 398 Mass. 806 (1986). *Doyle* v. *Ohio*, 426 U.S. 610 (1976). In the context of the trial as a whole, however, there was not a substantial risk of a miscarriage of justice. Far more fleeting than the questions concerning the defendant's discussion with DeRosa, the question as to the defendant's failure to go to the police was "not likely to influence, or even to seize the attention of the jury." *Commonwealth* v. *Johnson*, 32 Mass. App. Ct. 989, 992 (1992), quoting from *Commonwealth* v. *Cunneen*, 389 Mass. 216, 223-224 (1983).

More important, the strength of the Commonwealth's case was such that there was scant likelihood that the questioning could have made a difference. There was evidence from three witnesses that the defendant had "words" with the victim earlier in the day on April 16, 1990, about an event the night before. The defendant was said to have asked the victim why he had hit the defendant with a chair, and one witness testified that the defendant had told the victim, "I'm going to shoot you in the face." Later in the early evening, two witnesses, the victim's sister and a neighbor, saw the defendant, whom they both knew, pull out a silver gun and point it at the victim, who then ran toward his house. The defendant gave chase and fired two shots. After the second shot hit the victim in "the rump," the defendant ran away.

The victim's testimony that he did not know who had shot him was severely impeached by his statement to Detective Gomes when he was taken to the hospital. Gomes testified that the victim had told him that George (no last name), a black man, was his assailant and that when George pointed a gun at him and threatened to shoot him in the face, he had fled and then was shot.

The defendant's case as elicited from Silva, DeRosa, and the defendant had significant shortcomings. Silva's testimony was impeached by his earlier statement to Detective Gomes that he could not tell who was or was not the assailant. DeRosa's testimony placing the defendant elsewhere at certain times during the day of the incident was not consistent with his testimony that it was dark when they had separated. DeRosa and the defendant also had different versions as to whether a third person had accompanied them on a second trip to the bar that afternoon. In light of the Commonwealth's strong case, the very brief questioning of the defendant as to whether he had gone to the police does not require a reversal.

4. *Detective Gomes's testimony.* As indicated earlier, Gomes had testified as to what the victim had told him in the hospital. His testimony was admitted over the defendant's objection for impeachment purposes only. The defendant

claims this was error because the victim's hospital statement to Gomes was not inconsistent with the victim's trial testimony and should not have been admitted for impeachment purposes. The victim testified that he did not know who shot him, did not see the defendant, and did not tell Gomes that a black male known as George had approached him before he was shot. The defendant argues there was no inconsistency because the victim did not consider the defendant to be black and, moreover, the victim knew the defendant's last name.[3] There was no abuse of discretion in considering the statements inconsistent. See *Commonwealth* v. *Simmonds*, 386 Mass. 234, 242 (1982).

5. *Testimony of victim's mother.* The defendant argues that the victim's mother's testimony that the defendant had a gun because of the way he kept his hand in his pocket should have been struck upon the defendant's objection. The evidence was not offered as opinion evidence and was elicited after the witness testified that the defendant had a gun. When asked about having seen a gun, she mentioned that the defendant had held his hand in his pocket in a certain way.[4] Even if her statement is viewed as an opinion, it was a conclusion, "not requiring special learning or experiment," and hence is admissible as a statement of "observed facts." *Commonwealth* v. *Robertson*, 357 Mass. 559, 563 (1970), quoting from *Commonwealth* v. *Tracy*, 349 Mass. 87, 95-96 (1965), cert. denied, 384 U.S. 1022 (1966).

*Judgments affirmed.*

---

[3]At a bench conference the judge said he would allow Gomes to testify as to the victim's statements in the hospital and indicated that he, the judge, considered the defendant to be a "light skinned Negro or Hispanic." The defendant is a Cape Verdian.

[4]We note that the defendant in cross-examination elicited more explicitly the reason for the victim's mother's conclusion that the defendant had a gun.