COMMONWEALTH vs. RICHARD CHARLES BROWN, JR.

Hampden.    October 16, 1980. — February 3, 1981.

Present: GREANEY, ROSE, & PERRETTA, JJ.

*Jury and Jurors. Constitutional Law*, Jury. *Practice, Criminal*, Challenge of jurors, Fugitive from justice, Waiver of appellate rights. *Evidence*, Impeachment of credibility.

A defendant who defaulted on the second day of his three-day trial but was subsequently apprehended and returned to court for sentencing did not, by his default, waive his appellate rights. [290-291]

On a showing that the prosecutor at the trial of a black defendant charged with armed robbery of a white man used three of six peremptory challenges to exclude the only three black members of the venire, and that the prosecutor, when asked to explain this use of peremptory challenges, responded by accusing defense counsel of improperly challenging all of the available white jurors, the defendant established that he had been denied his rights under art. 12 of the Massachusetts Declaration of Rights and was entitled to a new trial. [291-295]

Discussion of the circumstances in which a defense witness may be impeached by his failure to offer his exculpatory information to the police prior to trial. [295-297]

INDICTMENT found and returned in the Superior Court Department on August 8, 1978.

The case was tried before *Garvey*, J., a District Court judge sitting under statutory authority.

*Patricia A. O'Neill* for the defendant.

*William T. Walsh, Jr.*, Assistant District Attorney, for the Commonwealth.

ROSE, J. The defendant appealed from a conviction, following a jury trial, of armed robbery. On April 4, 1979, before the defendant's appeal was docketed in this court, he filed a motion for a new trial based on the holding in *Commonwealth* v. *Soares*, 377 Mass. 461 (1979), cert. denied,

444 U.S. 481 (1980).[1]  Following a hearing held on May 2, 1979, the motion judge, who was not the trial judge, filed a memorandum declining to act on the motion and the case was reported to us on the record.  The defendant raises two issues:   1) whether the prosecutor improperly used his peremptory challenges systematically to exclude members of a particular racial group from the jury that ultimately con- victed the defendant and; 2) whether the trial judge erred in overruling the defendant's repeated objections to the prosecutor's cross-examination of alibi witnesses relating to their failure to report their information to the police.

The Commonwealth presented its case through two white witnesses:  the victim of the robbery and the Spring- field police officer who presented trays of mugshots to the victim for identification of his two black assailants, one of whom he identified as the defendant.  The victim testified that on April 18, 1978, at 9:00 P.M., while he was attending the Gasland gasoline station in Springfield, two black men approached the cash booth where he was sitting.  The taller of the two, later identified as the defendant, displayed a gun and demanded that the victim step behind the fence ad- jacent to the station and surrender his money to the men.  Moments later, a car drove up and someone shouted "po- lice, halt," causing the two to flee with the approximately fifty dollars they had taken from the victim.  Although the lighting was good near the booth, it was poor behind the fence.

The defendant presented two alibi witnesses, his step- sister, Willabelle Brown, and her friend, James McCans, Jr.  Both testified that the defendant was visiting with them at his stepsister's home during the robbery and left with Mc- Cans at approximately 10:00 P.M.  On cross-examination, over defense counsel's objections and exceptions, the pros- ecutor asked both witnesses repeatedly whether either of them had told the police that the defendant had been with

_____

[1] The defendant was convicted on December 7, 1978, well before the *Soares* case was decided on March 8, 1979.

them.  Brown explained that she had not because the police had not asked her and that she had told the defendant's lawyer.  When asked the question for the third time, she answered that she did not know the defendant was in jail. McCans responded to the questions similarly, explaining his inaction at one point by answering that the defendant had been arrested several times before.

1.  *Improper Use of Peremptory Challenges.*

In *Commonwealth* v. *Soares, supra,* the court held that art. 12 of the Massachusetts Declaration of Rights[2] precludes the exercise of peremptory challenges by the prosecution or the defense counsel to exclude members of discrete groups, solely on the basis of bias thought to derive from the individual's membership in the group.  The court concluded that there was sufficient evidence to create a prima facie case that the use of peremptory challenges by the prosecutor was designed to exclude persons from the jury on the basis of race and that the failure of the trial judge to allow a hearing on the issue deprived the defendant of his constitutionally protected right to a trial by a jury fairly drawn from the community.  The court made this rule retroactively applicable to all defendants, such as Brown, whose cases were then on direct appeal.  Brown contends that through the prosecutor's use of peremptory challenges to exclude all three of the three available blacks from membership in the jury that convicted him, he too was deprived of the right to a trial by a jury fairly drawn from the community.  When asked by the court to explain this use of peremptory challenges, the prosecutor responded by accusing defense counsel of improperly challenging all of the available white jurors.

We deal first with the Commonwealth's argument that since the defendant defaulted on the second day of his three-

---

[2] Article 12 provides in pertinent part: "And no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land."

day trial, he is beyond the jurisdiction of this court and cannot be heard to complain of errors at his trial under the doctrine announced in *Commonwealth* v. *Rezendes*, 353 Mass. 228 (1967). We reject this argument, for *Rezendes* applies only to defendants who voluntarily absent themselves from the jurisdiction of appellate courts, thereby waiving their appellate rights.[3] We decline to extend this rule to defendants appealing from errors of law that allegedly occurred during trials from which they defaulted.

We are, therefore, presented squarely with the question whether the defendant's art. 12 right to a trial before a jury of his peers was violated. The importance of this right cannot be overstated. In *Commonwealth* v. *Ricard*, 355 Mass. 509, 512 (1969), the court noted that "[a] fair jury is one that represents a cross section of community concepts." The key objective sought to be furthered by the requirement of a representative cross section of the community is the assurance of a diffused impartiality. *Commonwealth* v. *Soares, supra* at 480. Public confidence in the fairness of the criminal justice system and community participation in the administration of justice are also critical by-products of juries composed of a representative cross section of the community. *People* v. *Wheeler*, 22 Cal. 3d 258, 270-272 (1978). *Thiel* v. *Southern Pac. Co.*, 328 U.S. 217, 227 (1947) (Frankfurter, J., dissenting). *Taylor* v. *Louisiana*, 419 U.S. 522, 528 (1975).

As the *Soares* court noted, however, the goal of diffused impartiality is not necessarily synonymous with absolute proportionality. 377 Mass. at 482. Apart from the administrative difficulties inherent in achieving absolute proportionality, the proper use of peremptory challenges may result in juries that diverge from absolute proportionality and yet achieve diffuse impartiality. "Toward the end of

---

[3] After the defendant failed to appear on the second day of trial, a verdict of guilty was reached at the close of the three-day trial. The defendant was apprehended after the verdict and returned to court for sentencing and is currently in custody.

'eliminat[ing] extremes of partiality on both sides,' and of assuring the parties 'that the jurors before whom they try the case will decide on the basis of the evidence placed before them, and not otherwise,' . . . peremptory challenges may be used to eliminate prospective jurors whose unique relationship to the particular case raises the spectre of individual bias." *Commonwealth* v. *Soares, supra* at 485, quoting from *Swain* v. *Alabama,* 380 U.S. 202, 219 (1965). Indeed, the use of peremptory challenges to remove jurors with interests relating to the particular case, a process that may incidentally skew the population mix of the jury, serves to promote "the impartiality of the jury without destroying its representativeness." *People* v. *Wheeler, supra* at 276.

While the proper use of peremptory challenges can augment the goal of diffuse impartiality, the improper use of such challenges can promote and has promoted the opposite. It was for this reason that the court in *Soares* concluded: "If the constitutional mandate of a jury which fairly reflects a cross section of the community is to signify more than hollow words in this Commonwealth, we cannot permit the peremptory challenge to be exercised with absolute and unbridled discretion." *Commonwealth* v. *Soares, supra* at 484. It was the improper use of the peremptory challenge to exclude members of discrete groups solely on the basis of a bias presumed to be derived from that individual's membership in the group that the court in *Soares* condemned.

In examining the case before us, we are guided by the test set forth in *Soares* for determining whether peremptory challenges have been employed properly. The test begins with a presumption of the proper use of peremptory challenges. This presumption, however, is rebuttable by either party on a showing that "(1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood that they are being excluded from the jury solely by reason of their group membership." *Commonwealth* v. *Soares, supra* at 480. If

the complaining party rebuts the presumption of the proper use of peremptory challenges, the burden then shifts back to the allegedly offending party to demonstrate, if possible, that the group members were not struck on account of their group affiliation. It is with this test that we examine the defendant's contention that a pattern of conduct developed at his trial whereby several black prospective jurors who were challenged peremptorily were so challenged because they were black, and that the prosecutor failed to demonstrate that the prospective jurors were not struck on account of their group membership.

The defendant and his codefendant, both black, were convicted of armed robbery of a white man by a jury from which all three of the three eligible blacks had been excluded. During the seating of the jury, from a total of forty in the venire, the prosecutor exercised six peremptory challenges. Three of the challenged jurors were black, two white, and one Hispanic.[4] Through his use of these challenges, he excluded one hundred per cent of the available black jurors, and only slightly more than eight per cent of the prospective white jurors.[5] The difficulty in determin-

---

[4] The defendant, in his brief, does not argue that the juror of hispanic origin was challenged on account of his membership in that group and treats the challenged juror as a member of the racial majority. Since the issue has not been argued, we express no opinion as to whether a party can meet the first prong of the two-prong test provided in *Soares* by a showing that several members of various nonmajority groups have been challenged peremptorily. We await another day to resolve that issue.

[5] The Commonwealth argues that at least one of the prospective black jurors was, on this record, properly challenged because, although the judge found him to be indifferent, the juror in question revealed that he knew a woman seated in the audience section of the courtroom. After it was established that she was not a witness and was indifferent, the prosecutor peremptorily challenged the juror. Under the test enunciated in *Soares*, once the complaining party rebuts the presumption of the proper use of peremptory challenges, the burden shifts to the allegedly offending party to establish that the challenges were not made on account of membership in a group. As the prosecutor here failed to establish that the juror in question was not struck because he was black, we reject the Commonwealth's argument.

ing whether a pattern of conduct has been established under the first prong of the Soares test is substantial when the total number of members in a discrete group in any given venire is small. See *Commonwealth* v. *Clark*, 378 Mass. 392, 407 n.17 (1979). Here, there were only three blacks available in the venire.

We think, however, that the defendant has established that a pattern of conduct did develop: the prosecutor challenged all three of the available black jurors.[6] The second element required to rebut the presumption of the proper use of peremptory challenges has also been established. The prosecutor's exclusion of all the black jurors and the one Hispanic sufficiently indicates the likelihood that the blacks were struck because they were black. Although such a showing is not a prerequisite to establishing improper use of peremptory challenges, we also note that the excluded jurors were of the same group membership as the defendants. Likewise, the defendant's two witnesses were members of the excluded group. Finally, the victim shared group membership with all of the remaining jurors. In these circumstances, we conclude that the defendant established that there was a likelihood that the three black jurors were excluded because of their group membership.

Since the defendant successfully rebutted the presumption of the proper use of peremptory challenges, the burden shifts to the Commonwealth to establish, if possible, that the black jurors were not struck on account of their group membership. In the case before us, such an explanation is wholly absent. Contrast *Commonwealth* v. *Clark*, 378 Mass. at 407 n.17. When briefly questioned regarding the reasons for his challenges, the prosecutor responded that defense counsel was engaged in a similar practice of striking all of the available white jurors. Such an explanation is hardly a rebuttal of the presumption. Apart from the im-

---

[6] Contrast *Commonwealth* v. *Kelly*, 10 Mass. App. Ct. 847 (1980), where the prosecutor peremptorily challenged two potential black jurors, but left three black jurors on the jury that ultimately convicted the defendant. Contrast also *Commonwealth* v. *Robinson*, 382 Mass. 189 (1981).

possibility of striking all the members of the majority group, the explanation, far from vindicating him of the charge, establishes that the prosecutor improperly used his peremptory challenges. Since we conclude that the prosecutor failed to explain satisfactorily that he did not use his peremptory challenges to exclude potential jurors on the basis of their group membership, we hold that the judge erred in denying the defendant's motion for the declaration of a mistrial.

2. *Propriety of Prosecutor's Cross-Examination.* The defendant contends that the trial judge erred when he denied the defendant's motion for a mistrial and overruled his objections to the prosecutor's repeated questioning on cross-examination of the defendant's two alibi witnesses with respect to whether the witnesses had reported their exculpatory information to the police. The defendant argues that because it would not have been natural for them to report their information to the police, their silence has no probative value and evidence concerning it should have been excluded. Since the issue of admissibility of the witnesses' pretrial silence is likely to recur at a new trial, we address the defendant's arguments.

We note at the outset that a citizen ordinarily has no legal obligation to offer exculpatory information to law enforcement authorities. See, e.g., *United States* v. *New York Tel.Co.*, 434 U.S. 159, 175-176 n.24 (1977). There are many situations, however, where the natural response of a person in possession of exculpatory information would be to come forward in order to avoid a mistaken prosecution of a relative or a friend. In such situations, the failure of a witness to offer the information when it would have been natural to do so might well cast doubt on the veracity of the witness's trial testimony.[7] See *Langan* v. *Pianowski,* 307

---

[7] Indeed, the court in *Commonwealth* v. *Cefalo*, 381 Mass. 319, 337-338 (1980), commented in passing in the context of an alleged violation of G. L. c. 278, § 23, the statutory provision proscribing reference to the fact that the defendant did not testify at any preliminary hearing, that the Commonwealth may examine witnesses as to their prior opportunities

Mass. 149, 151-152 (1940). A witness's silence in such circumstances is akin to a witness's "prior inconsistent statement," and, therefore, has probative value. That the veracity of a witness's trial testimony may be questioned through the introduction of prior inconsistent statements is a well-settled form of impeaching a witness. See Leach & Liacos, Massachusetts Evidence 112 (4th ed. 1967); McCormick, Evidence c. 5 (2d ed. 1972).

There may be other situations, however, where it would not be natural for a witness to offer exculpatory evidence to law enforcement officials. In these circumstances, the witness's failure to speak is perfectly consistent with his trial testimony. Some individuals, for example, may believe that the disclosure of their information to the police would be futile. Indeed, the prosecutor conceded in the present case that the disclosure of the witnesses' information would not have led to the defendant's release. In other situations, the witness may not be aware of the charges against the defendant with sufficient detail to know that he possesses important exculpatory information. Finally, some individuals may have been explicitly told by the defendant's lawyer not to discuss the case. Given these very real possibilities, we think some caution is appropriate before a witness's failure to report his information to Commonwealth authorities is introduced to impeach his trial testimony. The goal of such precaution is to establish that the witness's pretrial silence is in fact inconsistent with his trial testimony. To this end, as suggested in *People* v. *Dawson*, 50 N.Y.2d 311, 321-322 (1980), we think that the prosecutor should lay a foundation for this type of cross-examination by first establishing that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper

---

to tell their stories to Commonwealth representatives. See also *Commonwealth* v. *Ronayne*, 8 Mass. App. Ct. 421, 426-427 & n.4 (1979). We note, however, that neither case directly addressed the issue presented here.

authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so. Of course, in order to ensure that the jury is not misled by the prosecutor's efforts to impeach the credibility of the defense witness's testimony, whether such information ultimately reaches the jury remains within the sound discretion of the trial judge. See *Hathaway* v. *Crocker*, 7 Met. 262, 266 (1843); *Commonwealth* v. *Chase*, 372 Mass. 736, 747-748 (1977).

Because we hold that the prosecutor failed to explain adequately his use of peremptory challenges following the defendant's prima facie showing of their improper use, the judgment is reversed, the verdict set aside and the case remanded for a new trial.

*So ordered.*