COMMONWEALTH vs. LEONARD E. EGERTON.

Suffolk. October 7, 1985. — January 13, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Assault with Intent to Rape. Indecent Assault and Battery. Practice, Criminal*, Instructions to jury. *Evidence*, Impeachment of credibility.

At the trial of an indictment charging forcible rape of a child under sixteen at which the defendant was convicted of assault with intent to rape the child, there was no error in the judge's refusal to instruct the jury on the lesser included offense of indecent assault and battery on a child under fourteen, where the defendant presented an alibi defense, and where, although there was conflicting testimony respecting the issue of penetration, there was no evidence to contradict so much of the victim's testimony as warranted a finding of intent to rape. [502-505]

At the trial of a rape case at which two defense witnesses testified concerning the defendant's alibi, there was no prejudicial error in permitting the prosecutor to question these witnesses about their failure to come forward with the exculpatory information before trial. [506-508]

At the trial of a criminal case, the prosecutor's questioning of two defense witnesses about their failure to testify at the defendant's probable cause hearing did not violate G. L. c. 278, § 23, which prohibits reference to the fact that the defendant failed to offer any evidence in his own defense at a preliminary hearing. [508]

INDICTMENT found and returned in the Superior Court Department on December 15, 1982.

The case was tried before *James P. McGuire*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*John F. Palmer* for the defendant.

*Judy G. Zeprun*, Assistant District Attorney, for the Commonwealth.

LIACOS, J. Leonard E. Egerton (the defendant) was indicted for forcible rape of a child under sixteen years of age. G. L. c. 265, § 22A (1984 ed.). The case was tried before a jury in

Suffolk County. The jury found the defendant guilty of assault with intent to rape the child. G. L. c. 265, § 24B (1984 ed.). He was sentenced to a term of nine to twelve years in the Massachusetts Correctional Institution at Walpole (now Cedar Junction). On appeal, the defendant claimed error based on the trial judge's failure to charge the jury on the lesser included offense of indecent assault and battery on a child under the age of fourteen. G. L. c. 265, § 13B (1984 ed.). The Appeals Court agreed, and, in an unpublished memorandum and order, reversed the judgment of conviction. 19 Mass. App. Ct. 1102 (1984). The Appeals Court did not consider the defendant's second argument, that the prosecutor improperly cross-examined the defendant's alibi witnesses thereby denying him a fair trial. We granted the Commonwealth's application for further appellate review. Mass. R. A. P. 27.1, as amended through 367 Mass. 921 (1975). On consideration of both issues, we affirm the conviction.

We summarize the evidence submitted to the jury. The victim, a seven year old girl, lived with her mother. On Friday, October 1, 1982, she went to stay at her father's apartment for the weekend. She returned to her mother's home on Sunday. The following day, while laundering the clothes which the victim had taken with her to her father's house over the weekend, the mother noticed that a pair of her daughter's underwear was stained like those of an "adult woman." On Monday evening the mother observed her daughter repeatedly scratching her groin area and inquired as to the reason. The victim began to cry and told her mother that a friend of her brother had hurt her with his "private." She could not remember the name of her assailant but described to her mother a person resembling the defendant, whom she had met outside her father's apartment building that past Friday.[1]

---

[1] The victim testified that she was standing outside her father's apartment house with her brother and a friend when the defendant came by, placed her on his shoulders, and asked her what her birth sign was. Her brother and friend both corroborated this account. The defendant testified that he had no memory of such an incident.

The mother took her daughter to Children's Hospital Medical Center where she was examined by Dr. Victor Fox and then interviewed by Detective Robert Lawrence of the Boston police department. The victim told the detective that "Lenny" had hurt her with his "private." Subsequently, she selected the defendant's photograph from an array of twelve pictures, and later identified him at his arraignment in Roxbury District Court, as well as at trial.

The victim testified that at some point on the morning of Saturday, October 2, 1984, she ascended the stairs of her father's apartment house to see if her brother Ricardo was on the roof. Not finding Ricardo there, the victim had started back down the stairs when she was confronted by the defendant. She testified that the defendant approached her while holding his "private," pushed her down, and told her to "[k]iss this." When she refused, the defendant pulled down her pants and underwear, forced her legs apart despite her struggle to keep them clenched together, and "put his private in [hers]." Using anatomically accurate dolls, the victim indicated that the defendant had penetrated her.[2] She stated that she did not tell anyone what had happened for several days because she was afraid. When she did inform her mother and Detective Lawrence about the incident, in separate conversations, her account, as recalled at trial by both the victim's mother and Detective Lawrence, was substantially identical to her own testimony.

Doctor Fox testified that when examining the victim he found no bruising or lacerations of the girl's genitalia. Her hymen was intact, and Dr. Fox perceived no evidence of trauma. He did note a "slight and diffuse" redness over the outer lips of her vagina but conceded on cross-examination that this could have been caused by a number of things, including persistent scratching. Dr. Fox also testified that he performed a test which indicated the presence in the victim's vagina of acid phosphatase, an enzyme characteristically found

[2] On the issue of penetration, the victim stated variously that "[h]e put it more in and then he put it out," that "[a]t first he put it just a little, then he put it way in," that she felt his "private" in hers "[j]ust a little," and that afterwards she hurt inside "[r]ight in the middle."

in seminal fluid. In addition, he conducted a Wood's lamp test, which involved shining an ultraviolet light on the victim's genitalia for evidence of fluorescing material. This procedure revealed a mucous substance that, in Dr. Fox's estimation, could have been seminal fluid. Based on his various findings, Dr. Fox could not say with medical certainty whether or not the victim had been sexually penetrated, but opined that his findings were consistent with penetration.

The defendant called two witnesses to refute Dr. Fox's medical testimony. David L. Brody of the Boston police department crime laboratory testified that he performed an acid phosphatase test on a gauze pad which Dr. Fox had used to swab the victim's vagina when examining her. Brody's test indicated trace levels of acid phosphatase, which in his view were not conclusive as to the presence of semen. He stated that other materials, including vaginal secretions, contain acid phosphatase and could account for a positive acid phosphatase test. He testified further that he examined two vaginal smears prepared by Dr. Fox, but found no indication of the presence of sperm.

John Cope Abbott, a forensic serologist, corroborated Brody's assertion that acid phosphatase is contained in vaginal secretions, as well as seminal fluid. He testified also that it would be unlikely to detect semen in the vagina more than forty-eight hours after its introduction there. In the instant case, the victim was not examined until three days after the alleged rape took place. In Abbott's opinion, therefore, the trace of acid phosphatase detected by Brody probably came from the victim's own vaginal secretions. With regard to the Wood's lamp test conducted by Dr. Fox, Abbott testified that a number of substances other than seminal fluid may cause fluorescence, among them vaginal lubricants and various soaps and detergents.

The defendant testified at trial and denied his guilt, claiming that he was not present at the relevant times. His defense was alibi, and he presented several witnesses (as later described) to establish and corroborate his alibi defense.

1. *Failure to charge on indecent assault and battery.* At the conclusion of the evidence, the judge instructed the jury on

the elements of forcible rape under G. L. c. 265, § 22A, and as to the elements of the lesser included offense of assault with the intent to rape a child under G. L. c. 265, § 24B. The defendant, at the conclusion of the judge's charge, orally requested a charge as to the lesser included offense of indecent assault and battery of a child under the age of fourteen. G. L. c. 265, § 13B. The judge declined. The defendant claims this to have been error. We disagree.

"A judge is required to charge the jury concerning lesser included offenses if the evidence provides a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense." *Commonwealth* v. *Santo,* 375 Mass. 299, 305 (1978).[3] In determining whether any view of the evidence would support a conviction on a lesser included offense, "all reasonable inferences must be resolved in favor of the defendant," *Commonwealth* v. *Vanderpool,* 367 Mass. 743, 746 (1975). "The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an

---

[3] We assume that indecent assault and battery is a lesser included offense of forcible rape of a child under sixteen years of age in violation of G. L. c. 265, § 22A. The Commonwealth has not argued to the contrary. In *Commonwealth* v. *Richmond,* 379 Mass. 557, 562 (1980), we stated that "one may be convicted of assault and battery on an indictment which charges rape." It follows that, because indecent assault and battery is merely an aggravated form of simple assault and battery, and the element of indecency necessarily inheres in the concept of rape, indecent assault and battery is likewise a lesser included offense of rape. See. J.R. Nolan, Criminal Law § 235 (1976) (indecent assault and battery is included within the offense of rape); *Commonwealth* v. *Perretti,* 20 Mass. App. Ct. 36, 42-43 (1985) (jury charged on the elements of indecent assault and battery as a lesser included offense of rape).

Compare *Commonwealth* v. *Rowe,* 18 Mass. App. Ct. 926 (1984), in which the Appeals Court stated that, because lack of consent is not an element of statutory rape under G. L. c. 265, § 23, but is an element of indecent assault and battery, the latter is not a lesser included offense of the former. See also *Commonwealth* v. *Morris,* 20 Mass. App. Ct. 114, 114 n.1 (1985) (defendant indicted for statutory rape and convicted of assault with intent to rape but acquitted of indecent assault and battery). In the instant matter, the defendant was not charged with statutory rape, G. L. c. 265, § 23, but with rape of a child under sixteen, G. L. c. 265, § 22A, which requires a showing of lack of consent, as does indecent assault and battery. *Commonwealth* v. *Burke,* 390 Mass. 480, 484 n.4 (1983).

instruction based thereon. . . . That is a question within the exclusive province of the jury." *Commonwealth* v. *Campbell,* 352 Mass. 387, 398 (1967), quoting *People* v. *Carmen,* 36 Cal. 2d 768, 773 (1951).

It is equally true, however, that a judge need not charge the jury on a hypothesis unsupported by the evidence. *Commonwealth* v. *Lee,* 383 Mass. 507, 513-514 (1981). *Commonwealth* v. *Costa,* 360 Mass. 177, 184 (1971). Even when evidence is introduced that would justify conviction for a lesser included offense, the defendant is not entitled to an instruction thereupon unless the proof on the "elements differentiating the two crimes is sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense." *United States* v. *Brischetto,* 538 F.2d 208, 209 (8th Cir. 1976), quoting *United States* v. *Thompson,* 492 F.2d 359, 362 (8th Cir. 1974).

The crime of indecent assault and battery is related to the crime of forcible rape, but the prosecutor is not required to prove a specific intent to rape. See *Commonwealth* v. *Hobbs,* 385 Mass. 863, 872 (1982). "The gravamen is the assault and battery which requires only the general criminal intent to do that which law prohibits." J.R. Nolan, Criminal Law § 234 (1976). Thus, the specific intent to rape is the critical element on which to focus in examining the evidence presented.

On the basis of the victim's testimony that the defendant approached her with his penis exposed and pushed her onto her back, there was evidence that would warrrant a conviction for indecent assault and battery. But the victim testified further that the defendant attempted to, and did successfully, rape her. The defendant's defense was primarily one of alibi, which, if believed, would lead to acquittal. Without more, the alibi evidence introduced would not provide a basis for requiring a lesser included offense instruction on indecent assault and battery because such evidence in no way negated the victim's testimony on the defendant's specific intent to rape. See Ettinger, In Search of a Reasoned Approach to the Lesser Included Offense, 50 Brooklyn L. Rev. 191, 210 (1984).

The defendant's cross-examination of the victim and Dr. Fox, as well as the testimony of his own experts, was intended to, and did in fact, refute a portion of the victim's testimony, but only in so far as that testimony bore on the issue of penetration. As a result of the inconclusive nature of the medical evidence adduced, the jury reasonably could, and obviously did, doubt whether the victim had been sexually penetrated by the defendant. That evidence did not, however, speak to the validity of the victim's testimony regarding the basic nature of the assault at issue, which remained essentially uncontradicted.

It is true, as the defendant argues, that the jury were free to disbelieve all, or any portion, of the victim's testimony, including that which indicated that the defendant had the specific intent to rape her. See *Lenn* v. *Riché,* 331 Mass. 104, 111 (1954). The jury might, for example, have believed that the defendant assaulted the victim indecently but intended, and did, nothing more. The judge's duty to charge on lesser included offenses, however, is not coincident with the jury's unique prerogative as the ultimate fact finder. The judge need not reconstruct all possible factual scenarios subsumed in the evidence presented, no matter how unreasonable, and charge the jury accordingly. There must be some evidence on the element differentiating the greater and lesser offenses. See *Commonwealth* v. *Hobbs, supra* at 871-872 (where two children testified that the defendant had jumped on their bed, masturbated, and then assaulted them, and the defendant claimed no involvement in the incident, there was no duty to instruct the jury on a theory of simple assault).[4] There was no error in the refusal of the judge to submit the issue of indecent assault and battery to the jury.

---

[4] Compare *Commonwealth* v. *Lee,* 383 Mass. 507, 512 (1981). The defendant was indicted for murder and at trial presented an alibi defense, claiming that he had been identified falsely. On appeal from his conviction, the defendant argued that the jury instructions on malice to which he had not objected were erroneous and cause for reversal. Reviewing the defendant's claim of error under G. L. c. 278, § 33E, we reasoned that the

2. *Cross-examination of alibi witnesses.* The defendant presented several alibi witnesses at trial to corroborate his story that he was at his own house until shortly before 11 A.M. on the morning of the alleged rape, and thereafter could account for his whereabouts until after 8 P.M. that night. One of these witnesses, Rosey Davis, a friend of the defendant, testified that she and the defendant were together from about 11 A.M. until 3:45 P.M. On cross-examination the prosecutor questioned Davis regarding her failure to come forward with her testimony immediately after she learned that the defendant had been arrested, and ascertained that she had not testified at the probable cause hearing. The defendant made no adequate objection to this line of questioning. The defendant's mother, Mary Louise Northington, also testified as an alibi witness, stating that the defendant had been at home on the morning of October 2 until nearly 11 A.M. The prosecutor questioned Mrs. Northington as to why she had not come forward prior to trial with her exculpatory testimony. The defendant objected to the inquiry in this instance, and the judge overruled his objections.

The defendant argues that the prosecutor's cross-examination of Davis and Northington was improper for two reasons: First, the Commonwealth failed to lay an adequate foundation for the type of impeachment engaged in here of a nonparty witness; and, second, the inquiry into the witness's failure to testify at the defendant's probable cause hearing violated G. L. c. 278, § 23 (1984 ed.). We address these contentions in turn.

propriety of the charge as to malice was not in issue because both parties tried and argued the case on the theory that a murder had been committed.

We think the instant case analogous to *Commonwealth* v. *Lee.* The defendant presented an alibi defense and in the alternative attempted to refute the victim's testimony to the extent that it alleged penetration. On appeal, he now seeks to advance a theory that was not presented to the jury. Moreover, while the defendant did orally request that the judge instruct the jury on the lesser included offense of indecent assault and battery, it appears that no written request was filed, nor was an objection taken to the judge's refusal to grant the oral request. Thus, the defendant chose not to pursue what might be characterized as an afterthought defense on his part, and we are disinclined here to allow him to "convert the consequences of unsuccessful trial tactics and strategy into alleged errors by the judge." *Commonwealth* v. *Lee, supra* at 512, quoting *Commonwealth* v. *Johnson,* 374 Mass. 453, 465 (1978).

In *Commonwealth* v. *Brown,* 11 Mass. App. Ct. 288 (1981), the Appeals Court outlined what we termed in *Commonwealth* v. *Berth,* 385 Mass. 784, 790 (1982), "an acceptable procedure to be followed when attempting to impeach a witness on the basis of pretrial silence." The prosecutor must establish "that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so." *Brown, supra* at 296-297.

The Commonwealth clearly established three of the four foundational elements required under *Brown.* Both Davis and Northington knew of the charges pending against the defendant in sufficient detail to be cognizant that they possessed exculpatory information. Each testified that she was aware that the defendant had been arrested for raping a child and that her information was very important to his defense. Similarly, both witnesses had reason to make the information available. Northington was naturally upset and concerned with her son's welfare. Davis testified that the defendant was her friend, and that she would want to help him if she could. Finally, both Northington and Davis stated that neither the defendant nor his counsel asked them not to reveal the information they possessed regarding the defendant's whereabouts on the day of the alleged rape.

It is less clear whether the prosecutor adequately established that both witnesses were familiar with the means of reporting their information. Assuming that the foundation for the questioning at issue was not properly laid because of the failure as to this last element, and further, that a proper objection was made as to the cross-examination of both witnesses, any alleged error on the judge's part was nonetheless harmless. A defendant challenging the judge's ruling in that regard has the burden of showing an abuse of discretion and resulting prejudice. *Commonwealth* v. *Repoza,* 382 Mass. 119, 125 (1980). No such showing has been made here.

The judge properly allowed those questions by the prosecutor which were directed at laying the requisite foundation under *Brown*. If there was any error at all, it involved only that portion of the cross-examination in which Davis and Northington were asked whether they had volunteered their exculpatory information previously either to police officers or as testimony at an earlier proceeding. Each witness answered in the negative. The prosecutor did not press the point further and made no reference in his closing argument to their pretrial silence. Standing alone, the brief inquiry and response on cross-examination did not so prejudice the defendant's case as to require reversal.

The defendant's second argument regarding the cross-examination of Davis and Northington is that it violated G. L. c. 278, § 23.[5] The statute provides that the fact that a defendant did not testify or offer evidence at any preliminary hearing may not be offered against him, or referred to or commented upon at trial. The defendant did not make a specific and timely objection at trial to preserve the issue for review. In any event, we conclude that there was no error. General Laws c. 278, § 23, proscribes reference to the defendant's failure to produce evidence at any earlier proceedings. Here the prosecutor made no statements or inquiries that would run afoul of the statute.

In summary, we conclude that the trial judge properly denied the defendant's request for instructions to the jury on the lesser included offense of indecent assault and battery. Further, we conclude that there was no reversible error in the manner in which the prosecutor was permitted to cross-examine the two alibi witnesses.

*Judgment affirmed.*

---

[5] General Laws c. 278, § 23, provides, in relevant part: "[T]he fact that the defendant did not . . . at any preliminary hearing . . . offer any evidence in his own defense, shall not be used as evidence against him, nor be referred to or commented upon by the prosecuting officer."