COMMONWEALTH *vs*. RICHARD RIVERS.

Worcester. January 21, 1986. — February 24, 1986.

Present: PERRETTA, DREBEN, & FINE, JJ.

*Evidence,* Impeachment of credibility.

At the trial of an indictment charging unlawful possession of a controlled substance, LSD, with intent to distribute it, it was reversible error for the judge to permit cross-examination of two defense witnesses with respect to their failure to inform police prior to trial that the defendant was buying the LSD from a prosecution witness, rather than selling it, when police appeared on the scene, where, on the record, the two witnesses knew only that the defendant had been charged with possession of LSD and not with possession with intent to sell; where, in the circumstances, the defense witnesses could reasonably have assumed that statements made to the police about the incident in question could subject them to the risk of prosecution; and where proof of the defendant's guilt depended exclusively on the testimony of a prosecution witness who was the only person the police actually saw with the LSD in his possession and was the only person to flee the scene when the police appeared. [647-649]

INDICTMENT found and returned in the Superior Court Department on June 14, 1982.

The case was tried before *Robert V. Mulkern,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

FINE, J. The defendant, Richard Rivers, was convicted by a Superior Court jury of unlawful possession of a controlled substance (LSD) with the intent to distribute it. G. L. c. 94C, § 32A, as amended by St. 1981, c. 522. The sole issue raised on appeal is whether the prosecutor's cross-examination of two defense witnesses concerning their failures to disclose to the police potentially exculpatory information exceeded permissible bounds.

The jury heard conflicting versions of the incident that led to Rivers' arrest. Most of the Commonwealth's evidence came from two witnesses. Michael Bean testified that as he was walking along a street in Spencer he saw Rivers' car parked, with Michael Donnelly and Andrew Morrow standing outside the car, Rivers sitting inside the car in the driver's seat and Rivers' girlfriend, Sharon Holmes, sitting in the passenger's seat. Bean stated that the defendant called out to him to ask if he wanted to buy some LSD.[1] Having responded positively, Bean joined Rivers and Holmes in the front seat and was handed a bag containing pills by Rivers. At about that moment, Bean saw a police officer outside the car, shining a flashlight on him. He threw the bag out the driver's window and fled. The following day he received a telephone call from Spencer police Officer Harry Comerford. At Comerford's request, Bean appeared at the station and, after being questioned, gave a statement consistent with his testimony at trial. Comerford gave the following testimony. As he came upon the scene, with the aid of his flashlight he saw Bean in the car holding a plastic bag. Almost immediately he saw Bean make a movement with the bag, appearing to drop it by the driver's side door and window. Bean then left the car and ran off. Comerford walked to the driver's side and observed a plastic bag containing pills on the ground. He asked Rivers, Donnelly, and Morrow if the pills belonged to them, and they answered, "no." Comerford placed Rivers under arrest. The next day he telephoned Bean. At the police station, within thirty to forty-five minutes of being given the Miranda warnings, Bean gave a statement implicating Rivers as the one who gave him the LSD.

Rivers, Donnelly, and Morrow all testified for the defense. According to their version of the incident, it was Bean who approached them and asked if they wanted to buy some LSD. When Donnelly and Morrow responded in the affirmative, Bean entered the car and produced the bag of pills. Holmes

---

[1] The drugs, established by laboratory analysis to have been lysergic acid diethylamide (LSD), were variously referred to during the trial as "acid," "mescaline" and "LSD".

also testified that Bean had produced the pills. Donnelly testified that he was taken to the police station after the incident and held for several hours in protective custody. While there he supplied Bean's name to the police.

Over proper objection, Holmes and Donnelly were asked on cross-examination whether they had told the police the night of the incident, or at any time before trial, that the LSD was Bean's and not Rivers'. When they responded, "no," they were questioned further about the reason they had not done so. Before allowing the cross-examination, the trial judge required that the prosecutor lay a foundation, including, among other things, some showing as to each witness's knowledge of the charges pending against Rivers. Both Holmes and Donnelly testified that they knew that Rivers was arrested in connection with the possession of LSD. Neither witness indicated any awareness that the defendant was charged with possession of the LSD with intent to distribute it.

"We note at the outset that a citizen ordinarily has no legal obligation to offer exculpatory information to law enforcement authorities. . . . There are many situations, however, where the natural response of a person in possession of exculpatory information would be to come forward in order to avoid a mistaken prosecution of a relative or a friend. In such situations, the failure of a witness to offer the information when it would have been natural to do so might well cast doubt on the veracity of the witness's trial testimony. . . . A witness's silence in such circumstances is akin to a witness's 'prior inconsistent statement,' and, therefore, has probative value . . . ." *Commonwealth* v. *Brown,* 11 Mass. App. Ct. 288, 295-296 (1981). Recommending caution in allowing impeachment of a witness by his failure to report information to the authorities, this court has required that a prosecutor, before conducting such cross-examination, lay a foundation as follows: "by first establishing that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper authorities, and that defendant or his lawyer, or both, did not

ask the witness to refrain from doing so." *Commonwealth* v. *Brown,* 11 Mass. App. Ct. at 296-297. If the foundation is properly laid, "whether such information ultimately reaches the jury remains within the sound discretion of the trial judge." *Commonwealth* v. *Brown,* 11 Mass. App. at 297. See also *Commonwealth* v. *Berth,* 385 Mass. 784, 790 (1982); *Commonwealth* v. *Nickerson,* 386 Mass. 54 (1982); *Commonwealth* v. *Hesketh,* 386 Mass. 153, 162-164 (1982); *Commonwealth* v. *Mahan,* 18 Mass. App. Ct. 738, 744 (1984).

Because an adequate foundation was not laid as to each witness's knowledge in detail of the charges pending against Rivers, we think the judge had no discretion to permit the cross-examination. The two witnesses knew only that Rivers was charged with possesion of LSD. True, they had information which Comerford did not have because they were present and Comerford was not at the crucial moments when an offer to sell the pills was first made and when the bag was first produced from someone's possession. Without an awareness that the Commonwealth was seeking to prove that Rivers was attempting to sell the drugs, however, the witnesses would not have known that they had important exculpatory information not already in the hands of the police. Moreover, assuming both that the trial testimony of Holmes and Donnelly was truthful and that they believed Rivers was being charged only with possession of the LSD, it would not have been natural, in the circumstances, for them to come forward and volunteer information to the police. This is because they were as vulnerable to the risk of prosecution as was Rivers. Just as prearrest silence of a defendant "says little about the truth of his trial testimony," see *Commonwealth* v. *Nickerson,* 386 Mass. at 60-61, silence of bystanders so closely related to a criminal episode that they would reasonably be fearful of a being prosecuted has negligible probative significance. "Although most lay people do not know the intricacies of their constitutional rights, it is a generally held notion that one does not have to say anything to the police and that what one does say may be used against him." *Commonwealth* v. *Nickerson,* 386 Mass. at 61.

Donnelly testified that he had agreed to purchase LSD from Bean. Holmes was in the car in the immediate vicinity of the drugs, just as Rivers was when he was arrested. Both Holmes and Donnelly, undoubtedly unsophisticated in the law, could reasonably have assumed that any statements they would make to the police, indicating knowledge of the unlawful contents of the plastic bag and some participation in the incident, might have been used against them to their disadvantage.

The error was not harmless. Although the judge gave the jury cautionary instructions on the use of the evidence, he did not inform them that a citizen has no obligation to offer information to the police. The evidence of Rivers' guilt was far from overwhelming. Proof of his guilt depended exclusively on testimony from Bean, the only person the police actually saw with the drugs in his possession, the only person to flee the scene, and a person with something to gain from testifying for the Commonwealth. The credibility of the defense witnesses was key. It is not unlikely that the improper cross-examination of two of those witnesses tipped the scale.[2]

*Judgment reversed.*

*Verdict set aside.*

---

[2] The offense occurred on New Year's Eve, 1981. The trial took place on September 29 and 30, 1982. The defendant was sentenced to two years at M.C.I., Concord. Due apparently to the death of a court reporter, the appeal was not entered in this court until July 26, 1985. Unfortunately, notwithstanding this reversal, the sentence has been served in full. It is unfortunate that no request for a stay of sentence pending appeal was filed. The delay due to the transcript appears to us to be unreasonably long, even considering its cause.