## Commonwealth *vs.* Winsome Brissett.

No. 01-P-69.

Suffolk. May 7, 2002. - September 16, 2002.

Present: Lenk, Kass, & McHugh, JJ.

*Evidence,* Impeachment of credibility, Alibi. *Witness,* Impeachment. *Alibi. Practice, Criminal,* Cross-examination by prosecutor.

At a criminal trial in which the defense was misidentification and alibi, the prosecutor's failure on cross-examination to lay the necessary foundation before asking the defendant and her alibi witness why each had not reported to the authorities that they had been together at the defendant's home at the relevant time required reversal, where the improper impeachment struck at the heart of the defense and may have tipped the balance in favor of the prosecution. [864-866]

Complaint received and sworn to in the Dorchester Division of the District Court Department on January 27, 1999.

The case was tried before *Thomas J. May,* J.

*Stella J. Robinson* for the defendant.

*Michelle L. Learned,* Assistant District Attorney, for the Commonwealth.

Lenk, J. The defendant appeals from her convictions, after trial by jury, of assault and battery and assault by means of a dangerous weapon (a shod foot), and from the denial of her motion for a new trial. On appeal, she raises two claims: first, that reversal is necessary because the Commonwealth improperly impeached the defense witnesses, resulting in severe prejudice to her case; and second, that she is entitled to a new trial because her trial counsel rendered ineffective assistance in failing to seek the suppression and exclusion of an unduly suggestive identification.

*Facts.* This case arises from a January 5, 1999, assault on Annaline Jugar in the Dorchester section of Boston. The defendant was charged in connection with the assault together

with her two sisters, the codefendants Laurice and Heather Taylor.[1] At the time of the incident, Jugar was staying with Robert Henry, her boyfriend of several years, who shared an apartment with his relative, Denise Brown. Brown was also Jugar's friend. On the evening of January 4, Laurice Taylor visited the Henry-Brown apartment in order to pick up her two children. Laurice Taylor and Henry had been lovers, and she had given birth to a child during the time that Henry was seeing Jugar. Laurice Taylor was upset that Jugar and Henry were together in Henry's bedroom, and an argument ensued.

A detective testified that Jugar told him that all three of them became embroiled in an argument during which Laurice Taylor attempted to toss a bucket of hot water on Henry and Jugar. Jugar also told the detective that Henry prevented Laurice Taylor from actually tossing the water, but that he failed to prevent her from throwing fruit juice on his bed. (The police did not check to see if there were signs of juice having been strewn about Henry's bedroom.) Both Henry and Laurice Taylor left the apartment after the argument ended. At trial, Jugar omitted mention of the alleged water- and juice-tossing incident, and instead testified that Laurice Taylor was at the house for two hours that night and that Laurice left after she and Henry had had a heated argument involving just the two of them.

Brown testified that Laurice Taylor returned to the apartment after midnight, claiming that she needed to retrieve an item for her daughter from Henry's room. A few minutes later, the doorbell rang again and two other women entered, who were subsequently identified as Laurice Taylor's sisters, Heather Taylor and the defendant, Winsome Brissett. The three women went to Brown's bedroom, where Jugar was lying on a bed watching television. The three assailants jumped on Jugar, punching and kicking her in the stomach and the head. Jugar testified that she was pushed off the bed and kicked and punched while lying on the floor, and that the defendant struck her in the

---

[1]The defendant was acquitted of assault and battery by means of a dangerous weapon, to wit, an iron; Laurice Taylor was convicted of assault and battery by means of a dangerous weapon (shod foot) and simple assault and battery; Heather Taylor was acquitted of both assault and battery by means of a dangerous weapon and simple assault and battery. Neither Laurice nor Heather Taylor is involved in this appeal.

knee with a laundry iron.[2] Brown largely corroborated Jugar's testimony.[3] The television provided the only source of light in the room.

After Brown telephoned for the police, the attackers fled. Police officers who arrived shortly thereafter described Jugar as having a large bruise on her forehead; a bloody, swollen face; and cuts and scratches on her body including her chest and knee. A detective testified that Jugar identified Laurice Taylor and "her two sisters Winsome and Heather, one of which had dreadlocks" as her assailants. Jugar testified that she could not identify Laurice's sisters and codefendants by name when the police arrived.

*The defendant's case.* The defendant testified that, in the afternoon of January 4, 1999, she was at her home in Boston, along with, among others, her five children (ranging in age from nineteen to four years old); her sisters, Laurice and Heather Taylor; Heather's newborn son; and Oslyn Farrell's son, for whom she frequently babysat. In the early evening, the defendant helped her sisters place items into Heather's car so that Heather could return to her home in Haverhill. Heather testified that she had given birth days earlier in a Boston hospital after a difficult delivery necessitating an episiotomy with stitches. She had been discharged to the defendant's home on January 3, where she spent time in bed with ice packs to the vaginal area, and she was on pain medication. Around 7:00 P.M. on January 4, Heather and the defendant dropped Laurice Taylor at her baby's father's house. Heather drove the defendant back to her own home, then left around 8:00 P.M. for Haverhill. Oslyn Farrell testified that when she arrived around 11:00 P.M. at the defendant's home to pick up her son, she went to the defendant's bedroom. The two testified that they talked and had a few beers together in the room until sometime between 1:30 and 2:00 A.M., when Farrell left with her son.

*Discussion.* The defense was misidentification and alibi. When the prosecutor cross-examined the defendant and Farrell,

---

[2]The police never seized or fingerprinted the iron or the bucket Laurice Taylor had wielded earlier.

[3]Henry was not home during the attack.

her alibi witness, the Commonwealth concedes[4] and the record is plain that the prosecutor failed to lay the necessary foundation before asking, over objection, why each had not reported to the authorities that they had been together at the defendant's home at the relevant time on the night of January 4-5. See *Commonwealth* v. *Nickerson*, 386 Mass. 54, 60-61 (1982); *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 296-297 (1981). As we observed in *Commonwealth* v. *Rivers*, 21 Mass. App. Ct. 645, 647-648 (1986):

> " 'We note at the outset that a citizen ordinarily has no legal obligation to offer exculpatory information to law enforcement authorities. . . . There are many situations, however, where the natural response of a person in possession of exculpatory information would be to come forward in order to avoid a mistaken prosecution of a relative or a friend. In such situations, the failure of a witness to offer the information when it would have been natural to do so might well cast doubt on the veracity of the witness's trial testimony. . . . A witness's silence in such circumstances is akin to a witness's "prior inconsistent statement," and, therefore has probative value . . . .' *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 295-296 (1981). Recommending caution in allowing impeachment of a witness by his failure to report information to the authorities, this court has required that a prosecutor, before conducting such cross-examination, lay a foundation as follows: 'by first establishing that the witness knew of the pending charges in sufficient detail to realize that he possessed exculpatory information, that the witness had reason to make the information available, that he was familiar with the means of reporting it to the proper authorities, and that the defendant or his lawyer, or both, did not ask the witness to refrain from doing so.' *Commonwealth* v. *Brown*, 11 Mass. App. Ct. at 296-297. If the foundation is properly

---

[4]At oral argument, the appellate prosecutor, who was not the author of the brief filed on the Commonwealth's behalf, attempted to defend the propriety of the cross-examination. We hold the Commonwealth to the arguments raised in its brief. See *Board of Appeals of Maynard* v. *Housing Appeals Comm. in the Dept. of Community Affairs*, 370 Mass. 64, 68 (1976); Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), & 16(b), as appearing in 411 Mass. 1602 (1992).

laid, 'whether such information ultimately reaches the jury remains within the sound discretion of the trial judge.' *Commonwealth* v. *Brown*, 11 Mass. App. Ct. at 297."

The issue is even more delicate when the prosecutor attempts to impeach the defendant for her pretrial silence, *Commonwealth* v. *Nickerson*, *supra* at 61-62, particularly when, as here, some portion of that period of silence followed the defendant's receipt of notice as to Jugar's complaint against her and her entry of a plea of not guilty. As in *Commonwealth* v. *Rivers*, *supra* at 648, we think the judge had no discretion to permit such cross-examination of the two women.

The question that remains before us is whether the improper cross-examination requires reversal; we conclude that it does. There being no physical evidence other than the fact of Jugar's injuries, proof of the defendant's guilt depended entirely on eyewitness testimony. Credibility therefore was key, especially where the defendant testified that she was home at the relevant time and provided an alibi witness to that effect. The improper impeachment of the witnesses struck at the heart of the defense strategy and thus may have tipped the balance, especially in light of the jury's apparent willingness to disbelieve portions of the prosecution testimony, viz., the total acquittal of Heather Taylor and the acquittal of the defendant on one of three charges. The Commonwealth's suggestion that its case was sufficiently robust to overcome its conceded error is undermined both by those acquittals and by the sheer lack of independent physical evidence linking the defendant to the beating. Moreover, there were some inconsistencies in the Commonwealth's evidence insofar as Jugar's trial testimony differed in several material respects from statements she made to the police immediately following the assault. Brown's testimony, which corroborated Jugar's trial testimony, hardly mitigates matters since the defendant also produced Farrell as a corroborating witness, thereby reinforcing our view that the case was a duel of word against word and that the defendant suffered prejudice warranting reversal.

The remaining issue arises from the denial of the defendant's motion for a new trial. Given our decision that the conviction cannot stand, we need not review the propriety of the denial of

the new trial motion. We are mindful that the underlying substantive issue concerning the suggestiveness of the identification may recur at any new trial, but we decline to reach it now. The judge's failure to make findings on the issue and the unfortunate condition of the transcript, riddled as it is with "inaudibles," together preclude meaningful appellate review. We reject the alternative of a remand in these circumstances, see *Commonwealth* v. *Mattias*, 8 Mass. App. Ct. 786, 788 (1979), and think the matter best left for defense counsel to raise anew should that be deemed appropriate if the Commonwealth pursues a new trial.

*Judgments reversed.*

*Verdicts set aside.*